United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SOLADIN KAING, as an individual and on behalf of all others similarly situated,

Plaintiff,

v.

PULTE HOMES, INC.; PULTE HOME CORPORATION, and PULTE MORTGAGE LLC,

Defendants.

Case No. 09-5057 SC

ORDER GRANTING MOTION TO DISMISS

## I. INTRODUCTION

This is a putative class action suit brought by Plaintiff Soladin Kaing ("Plaintiff") against Defendants Pulte Homes, Inc. ("PHI"), Pulte Home Corporation ("PHC") and Pulte Mortgage LLC ("PM") (collectively, "Defendants" or "Pulte"). Defendants PHC and PM have filed a Motion to Dismiss for lack of standing and for failure to state a claim upon which relief can be granted. Docket No. 16 ("Motion"). PHI has also joined in this Motion. See Docket No. 14 at 7-8. This Motion is fully briefed. Docket No. 24 ("Opp'n"), 30 ("Reply").

Having considered all of the papers submitted by the parties, the Court concludes that Plaintiff lacks standing to assert each of her causes of action against Defendants. For the reasons stated

below, the Court hereby GRANTS the Motion to Dismiss.

## II. **BACKGROUND**

PHI and its subsidiaries are variously engaged in the business of building and selling homes, as well as financing the purchase of homes by its customers. See Docket No. 1 ("Compl.") ¶ 1. Plaintiff alleges that PHI "provide[s] 'one-stop shopping' where it not only builds homes but it also provides virtually all of the services needed to complete a home sale, including in-house sales agents, financing, ancillary settlement services and appraisals." Id. PHI is incorporated in, and headquartered out of, the State of Michigan. See id. ¶ 10. PHC is an operating subsidiary that is directly engaged in the business of home building, and which regularly engages in business in the State of California. Compl. ¶¶ 10, 12. PM is a subsidiary owned by PHC, which "is the lending arm of Pulte Homes, Inc.," and which also maintains offices and does business in California. Id. ¶¶ 10, 13.

In or about February of 2006, Plaintiff purchased a new house from Defendants, located in Lathrop, California. Compl. ¶ 49. The house was located in a subdivision called Mossdale Landing, in which many or most of the homes were built, sold, and financed by Defendants. See id. ¶ 2-4, 16. Plaintiff claims that "Defendants marketed the house in the Pulte Aerial of Mossdale neighborhood as stable and desirable." Id. ¶ 49.

According to Plaintiff, she used one of Pulte's in-house sales agents to purchase the property. Id. She says that she was "encouraged by Pulte Homes to use Pulte Mortgage to finance the house," and was "provided significant financial incentives" to do



United States District Court
For the Northern District of California

so. Id. ¶ 50. In particular, she was told that she would be entitled to a $75,000 price reduction if she utilized PM. Id. ¶ 53, 55. When she inquired about whether she could instead use Bank of America to finance the mortgage, she was told that she would not receive this "discount" unless she used PM. Id. ¶ 53. Although she was told that the contract price of the house was $575,365, she claims that "Pulte knew from appraisals on other homes in the subdivision, that the house was worth less than $500,000." Id. ¶ 55. Pulte selected an appraiser, whom Plaintiff claims was dependent upon Pulte for much of its business, and who allegedly was under pressure to provide "inflated and pretextual" appraisals. Id. ¶ 51. The appraiser valued the house at $518,000, which (according to Plaintiff) proves that the $575,365 price offered, as well as the $75,000 discount, were "phony numbers from the start." Id. ¶ 55. Plaintiff ultimately purchased the house for $518,215, with charges totaling $531,972 after settlement fees. Id. ¶ 56. Plaintiff paid a total of $103,643 as a down payment, and financed the rest through a loan from PM. Id.

According to Plaintiff, she "would not have and could not have qualified for her loan" if she had been working with a "lender acting in good faith in an arms-length transaction." Id. ¶ 57. Her monthly income was less than $3500, which she told PM when she was applying for the mortgage. Id. ¶ 53. She notes that her income was listed as "0" on the mortgage application provided to her at closing. Id. Plaintiff also claims that no explanation of the terms of the loan was provided to her, and no lender was present to answer her questions when she executed the agreement. Id. ¶ 52. Nevertheless, Plaintiff has not indicated that she has



United States District Court
For the Northern District of California

been unable to make her regular payments on the mortgage, nor does she allege that she has been harmed by any of the terms in the loan documents to which she is a party -- although she does state, in passing, that she has sought to modify the terms of her loan to avoid foreclosure proceedings. Id. ¶ 58.

Plaintiff instead argues that she has been harmed by Defendants' failure to:

> provide Plaintiff with any disclosure that Defendants had sold houses, and would sell houses in the future, to unqualified and high-foreclosure-risk buyers. Defendants also did not disclose that they had sold houses, and planned to sell houses in the future, to investors who would not occupy the houses or to owners who were not financially qualified.

Id. ¶ 61.

Plaintiff claims that Defendants' regular practice was to sell houses in Mossdale Landing and other neighborhoods to unqualified purchasers (as well as to investment purchasers) through subprime loans and questionable loan practices. Id. ¶¶ 20-22. Plaintiff argues that Pulte knew that "its practice would invariably lead to loan defaults and foreclosures," and that these foreclosures had a "devastating" impact on the value and desirability of the neighborhoods. Id. ¶¶ 22-27. Yet Pulte "marketed the neighborhoods as stable and desirable neighborhoods while becoming even more aggressive in selling homes to unqualified and high-foreclosure-risk buyers, in order to prop-up demand and sales prices and continue receiving ever-increasing profits." Id. ¶ 28. According to Plaintiff, Pulte's practices resulted in increasing foreclosure rates in Mossdale Landing and other Pulte neighborhoods, as its high-risk customers began defaulting on their



United States District Court
For the Northern District of California

loans. Id. ¶ 31. Plaintiff believes that her home decreased in value by over 50%. Id.

Plaintiff now seeks to represent a class of individuals who have purchased homes from Pulte.[1] She raises four causes of action: (1) violation of sections 17200 et seq., of the California Business & Professions Code ("§ 17200"); (2) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 ("CLRA"); (3) negligent misrepresentation; and (4) breach of an implied covenant of good faith and fair dealing.

## III. LEGAL STANDARD

PHC and PM argue that Plaintiff has no standing to bring this suit, and seek dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Federal Courts are limited to review of actual "Cases" and "Controversies," as set out in Article III, section 2 of the Constitution. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" -- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct

[1] Plaintiff defines the proposed class as follows:

> All purchasers of homes from Pulte Home from January 1, 2005 through March 1, 2007, who lived in such homes and still own or who sold their home or who lost their home through judicial or non-judicial foreclosure and whose property is in the state of California in a "neighborhood" or "Community" as defined by Pulte Home.

Compl. ¶ 65.

complained of -- the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision.

Id. at 560-61 (internal quotation marks and citations omitted). The Plaintiff has the burden of establishing these elements, and at this stage of the litigation, "general factual allegations of injury resulting from the defendant's conduct may suffice." Id. at 561.

## IV. DISCUSSION

PHC and PM contend that Plaintiff lacks standing to bring this suit. In particular, they claim that Plaintiff has failed to allege an "injury in fact," and that whatever speculative injury Plaintiff has alleged is not "fairly traceable" to Pulte's actions. Mot. at 11.

As Plaintiff points out, she has attempted to set forth two distinct theories of harm stemming from Pulte's conduct: "first, due to Defendants' scheme, Plaintiff paid an inflated purchase price for her home," and "[s]econd, due to Defendants' deceptive marketing and lending practices, Plaintiff and the class have suffered a decrease in property value" that is "greater than has been suffered by houses in the surrounding areas." Opp'n at 7-8; Compl. ¶¶ 55, 64. The Court will analyze each type of harm separately to determine if it constitutes an injury caused by Defendants, that suffices to give Plaintiff standing to sue.

### A. Plaintiff's Bait-and-Switch / Overcharge Theory

Plaintiff alleges that Pulte represented that the contract



United States District Court
For the Northern District of California

sale for the house was $575,000, with a $75,000 discount that was "illusory" because the house was either "worth less than $500,000" or "at best $518,000." Compl. ¶ 55. She describes this as a "bait-and-switch" tactic that induced her to "act fast" and receive financing from PM rather than Bank of America. Id. ¶¶ 54-55. Plaintiff also states that, "prior to closing, the house was appraised by Pulte at $518,000." Id. at 55. Plaintiff integrates this theory into her first two causes of action, for breach of § 17200 and the CLRA. Id.[2]

The Court finds that it can resolve this issue solely on statutory, rather than Constitutional, standing grounds. Courts have held that, in some contexts, bait-and-switch tactics similar to the one alleged by Plaintiff can cause an overpayment-type injury in fact to plaintiffs. See, e.g., Laster v. T-Mobile United States, Inc., 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (holding that "bait-and-switch" advertising tactic suffices to establish injury in fact under § 17200, but that plaintiff failed to plead reliance). Presumably, if Pulte had applied the stated discount to the genuine value of the house, Plaintiff would have paid only $443,000 or less ($518,000 minus the $75,000 discount). However, standing under § 17200 requires more than mere allegations that a defendant engaged in fraudulent or deceitful business practices.

---

[2] This Court reads Plaintiff's overpayment theory to rest solely upon the alleged misrepresentations of value as outlined in the complaint. Compl. ¶ 55. Plaintiff also alleges that Pulte offered subprime loans to support "the creation of an artificial housing demand and artificial willingness to pay above-market rates." Compl. ¶ 21. As the Court reads the Complaint, Plaintiff appears to have included these statements only to describe Pulte's motives for issuing subprime loans. To the extent that Plaintiff intended to allege that she overpaid as a result of Pulte's efforts to artificially increase housing demand by offering subprime loans, the Court rejects this line of argument as far too speculative.

Standing also requires a plausible claim of causation, which in turn requires a showing of reliance. See Cal. Bus. & Prof. Code § 17204 (limiting private right of action to those who have "suffered injury in fact and has lost money or property as a result of the unfair competition"); Hall v. Time Inc., 158 Cal. App. 4th 847, 856-57 (Ct. App. 2007) (discussing cases that have addressed reliance as prerequisite to standing under § 17200).

In one sense, Plaintiff does plead that she relied upon Defendants' claims that the contract price of the house was $575,000 -- she claims that she would have used Bank of America to finance the purchase but for the "discount" offered by Defendants. Compl. ¶ 54. However, she does not suggest that she was injured by her use of PM rather than Bank of America. More importantly, she does not claim that she paid the price she paid, or purchased the home, because of Pulte's initial representations. Nor could she plausibly do so. Any claim of reliance upon Defendants' initial representation would be directly contradicted by her claim that she received an appraisal prior to closing, and learned that the house was appraised around $518,000. See id. ¶ 55. Because she knew that the house was worth less than the initial contract price stated by Defendants before closing, she cannot plausibly claim that she relied on the higher initial representation. The timely appraisal undercuts any claim that she "lost money or property as a result of the" alleged misrepresentation. C.f. Cal. Bus. & Prof. Code § 17204. She has not pointed to any other loss or injury that she suffered as a result of Defendants' alleged misrepresentation as to the contract price of the house. She therefore has no standing to sue under § 17200.



United States District Court
For the Northern District of California

Plaintiff lacks standing to sue under the CLRA for the same reason: without a plausible claim that she suffered an injury "as a result of" the offending conduct, there is no standing to sue under the CLRA. Cal. Civ. Code § 1780(a). In addition, application of the CLRA is explicitly restricted to those who engage in a "sale or lease of goods or services." Cal. Civ. Code § 1770. The CLRA does "not apply to any transaction which provides for the construction, sale, or construction and sale of an entire residence . . . with or without a parcel of real property or an interest therein . . . ." Id. § 1754. Even though the $75,000 "discount" was established to induce Plaintiff to use PM rather than other lenders, Plaintiff's "bait-and-switch" allegations relate exclusively to the purchase price of the house, rather than the ancillary services provided by PM. Put otherwise, Plaintiff claims that she overpaid for the house, and not the financial services. Consequently, this theory is not grounded in a "sale or lease of goods or services" as defined by the CLRA, and she lacks standing to assert her bait-and-switch theory to establish an injury under the CLRA.

The Court therefore finds that Plaintiff lacks statutory standing to pursue her bait-and-switch theory under either her first or second causes of action.

**B. Plaintiff's Reduced-Value Theory**

Throughout her Complaint and four causes of action, Plaintiff's primary theory is that she has been injured because Pulte's lending practices caused widespread foreclosures in her neighborhood, and this has driven down the value of her house.[3]

[3] Because this theory is integrated into four causes of action, including common law causes of action for negligent



United States District Court
For the Northern District of California

This theory raises questions as to whether Plaintiff suffered a Constitutionally cognizable injury in fact, and whether any such injury was fairly traceable to Pulte's actions. Plaintiff argues that she can establish an injury in fact merely by pleading that the house has diminished in value. Opp'n to Mot. at 6.

To support her position, Plaintiff cites to Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., in which the Supreme Court cited a reduction in home values, among various other injuries, in finding that plaintiffs had standing to sue a polluter for violating the Clean Water Act. 528 U.S. 167, 182-83 (2000). It is true that a diminution in the value of a house caused by a change in that houses surrounding environment may generally comprise an "injury in fact" for constitutional standing purposes. See, e.g., Tyler v. Cuomo, 236 F.3d 1124, 1132 (9th Cir. 2000) (finding that homeowners had standing to sue government entities over housing project, under the National Environmental Policy Act and National Historic Preservation Act, because their "homes are directly affected by changes to structures in the neighborhood"). However, Plaintiff has not alleged that Pulte has injured her by altering the physical environment around her house -- only that Pulte has altered the general economic conditions of her neighborhood. Pulte's practices affected the value of Plaintiff's house because they caused foreclosures and short sales, which "become the new comparative sales values for the neighborhood, which result in a vastly lower market rate." Compl.

---

misrepresentation and breach of an implied covenant of good faith and fair dealing, the Court will examine whether Plaintiff meets the standing requirements grounded in Article III of the Constitution, rather than individual statutes.



United States District Court
For the Northern District of California

¶ 26. These practices allegedly "result[ed] in abandoned houses; multiple families living in one home; transient neighbors with no long-term ties to the neighborhood; unfinished yards and unkempt yards; and, in some cases, increased crime." Id. ¶ 27.

Compared to a diminution in value that is tied to a physical change to the neighborhood's environment, such as pollution or the construction of a new housing project, a decline in value that is tied to a purely economic change to a neighborhood is much more difficult to characterize as "concrete and particularized, and actual or imminent." See Lujan, 504 U.S. at 560-61. Such economic conditions are likely to change with the broader economy, and any decline in housing value can potentially evaporate before Plaintiff has suffered a concrete injury, even in the absence of redress from the courts. Given that Plaintiff has not sold, or even attempted to sell, her house under these new economic conditions, it is not clear that the diminished value of her house is cognizable as an "injury in fact."

As one court considering a similar complaint has articulated:

> Since the reduced value about which Plaintiffs complain would have resulted from an economic glut of supply, then such harm is only realized if Plaintiffs sell their home during such glut. If Plaintiffs chose to remain in their home until more favorable economic conditions arrive, then they will have realized no loss at all.

Tingley v. Beazer Homes Corp., No. 07-176, 2008 U.S. Dist. LEXIS 34303, *14 n.3 (W.D.N.C. Apr. 25, 2008). The type of injury that Plaintiff alleges "is of a type which would not necessarily have a long term impact on home prices." Green v. Beazer Mortgage Corp., No. 07-1098, 2007 U.S. Dist. LEXIS 66887, *7 (D.S.C. Sept. 10, 2007) ("Plaintiff does not . . . suggest that she or any of her

other similarly 'injured' neighbors have realized this decrease in value (e.g., as a result of sale of the home). Thus, the injury is neither concrete nor particularized."). Consequently, this Court finds that Plaintiff has failed to articulate an injury in fact that is "concrete and particularized, and actual or imminent." C.f. Lujan, 504 U.S. at 560-61.

Plaintiff faces a similarly insurmountable problem with respect to the causation element of standing. "[T]he injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Lujan, 504 U.S. at 560-61. Any loss in value that Plaintiff has suffered has resulted not just from the actions of Pulte, but also from the independent actions of all of the various residents of Plaintiff's neighborhood. She alleges that Pulte entered into a myriad of independent contracts with each independent homeowner; these homeowners independently defaulted and independently decided to allow foreclosure, and this collectively had an impact on the value of her home. Plaintiff's theory therefore depends upon a chain of causation that is dependent upon many factors, "such as unemployment, health problems, a general weakening economy, or other financial conditions," the decisions of various homeowners to foreclose rather than refinance,[4] as well as other economic factors that can have unpredictable effects on the housing market. Tingley, 2008 U.S. Dist. LEXIS 34303 at * 11-12. Any injury suffered by Plaintiff therefore necessarily depends upon

[4] Plaintiff demonstrates that foreclosure has not been an inevitable consequence of Pulte's practices; she herself received financing through PM but has apparently not entered into foreclosure, even though Pulte was allegedly irresponsible in financing her loan. See Compl. ¶¶ 57, 58.



United States District Court
For the Northern District of California

a causal chain that includes numerous individual decisions of "some third part[ies] not before the court." Lujan, 504 U.S. at 560-61.

This Court therefore finds that Plaintiff has no standing to sue for any subsequent reduction in value of the house resulting from the economic consequences of Pulte's practices.

## V. CONCLUSION

This Court finds that Plaintiff lacks statutory standing to sue Pulte for its alleged bait-and-switch scheme. The Court further finds that Plaintiff would be unable to amend her pleadings so as to correct these deficiencies without directly contradicting the pleadings set forth in her initial Complaint. Consequently, Plaintiff's first and second causes of action are DISMISSED WITH PREJUDICE as to Plaintiff's bait-and-switch allegations.

This Court further finds that Plaintiff lacks constitutional standing to assert any cause of action based on a theory that Defendants harmed her by causing her house to depreciate in value. Consequently, all of Plaintiff's remaining causes of action are DISMISSED WITH PREJUDICE.

Defendants' Motion to Strike, Docket No. 18, and the Motion to Dismiss filed by Pulte Homes, Inc., Docket No. 14, are both DENIED as moot.

IT IS SO ORDERED.

Dated: February 18, 2010

UNITED STATES DISTRICT JUDGE



United States District Court
For the Northern District of California